THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* TOMÁS DÍAZ DÍAZ, Defendant and Appellant.

Nos. CR-63-321, CR-63-322.        Decided February 19, 1965.

*Ángel Viera Martínez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Manuel Tirado Viera, Assistant Solicitor General,* for The People.

Division composed of Mr. Acting Chief Justice Pérez Pimentel, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

PER CURIAM: From a lengthy transcript of evidence—consisting of 867 pages—appellant has selected several isolated incidents to formulate some of the ten assignments of error he alleges to request the reversal of the sentences imposed on him for the offenses of murder in the second degree and of carrying a prohibited weapon.[1] To make the discussion easier we made a logical classification of the errors and thus we shall consider them in the following order: (a) errors dealing with actions or interventions of the court while witnesses testified (first two errors); (b) those related to the admission or exclusion of evidence introduced by the parties (third, fourth and tenth errors); (c) challenges to instructions (sixth, seventh, and eighth errors); and, finally, (d) those directed to the sufficiency of evidence (errors nine and ten).

---

[1] Both the trial judge and this Court dismissed petitions to admit bail bonds.

740

■ (a) The first incident chosen to prove that appellant did not have an impartial trial practically boils down to a question of pure semantics. It rests on the connotation they seek to give the word *now* used by the court in stating: "Enough. The situation is clear. The witness admitted having told the prosecuting attorney that Tomás [the defendant] had told him to ask Daniel [the victim] never to go to the place of business. Now, he denies having told the prosecuting attorney that Tomás had said that he was going to kill him (the victim) if he ever went to the business." (Tr. Ev. 668–669). An examination of the testimony of witness Luis Vázquez Sandoval leaves no doubt that the term was not used in its meaning as an adverb of time—at this moment—but as a continuative conjunction to announce or introduce a thought. The best proof for this is that the phrase following is preceded by a comma. Anyway, the incident is of no importance because on redirect examination said witness reaffirmed once and again, when questioned by the judge, that appellant had not sent any message to the victim.

■ He also complains of the "continuous and unnecessary" intervention of the trial judge in actively examining the witnesses, arguing contentions of the defense, and making extemporaneous comments and orders. Even though many incidents in which the judge intervened are mentioned, his action came within the court's province to clarify the facts and, taken as a whole, it cannot be said that they transgress the standard we discussed in *People* v. *Aletriz*, 85 P.R.R. 621 (1962). It cannot be affirmed that the theory of the People was established through examination or interventions by the judge. The record manifestly shows that this mission corresponding to the prosecuting attorney was discharged by said officer exclusively and the judge limited himself to clarifying certain facts, especially if we consider that it was a long proceeding in which both parties tried

to pry into and investigate every single detail. Actually, in most occasions, the judge's questions referred to unimportant aspects which were not decisive in judging the guilt or innocence of defendant; they were mere trivialities. See *People* v. *Martell Cajigas,* 88 P.R.R. 617 (1963); *People* v. *Andrades,* 83 P.R.R. 818 (1961); and *People* v. *Rivera,* 83 P.R.R. 452 (1961).

(b) In the third assignment he maintains that the court did not permit the defense to examine the witnesses for the prosecution as to (1) the violent, aggressive and impulsive character of the deceased; (2) his habit of using weapons; and (3) the occurrence of an incident between the appellant and the deceased prior to the date of his death. Assuming that the trial judge's rulings were erroneous, *cf. People* v. *Dumas,* 51 P.R.R. 819 (1938), they in no way prejudiced appellant, because in his turn for introducing evidence—after announcing at the close of the evidence of the People that his theory was that of self-defense—he introduced testimonies which tended to establish precisely these facts. See, also, Jones, Evidence, § 172, where it is stated that "in order for the defendant to introduce evidence of the turbulent and quarrelsome character of the victim of his assault he must first introduce foundation evidence tending to show that he acted in self-defense."

He insists that the admission of certain statements supposedly made by defendant during the investigation was inappropriate, adducing that they were obtained by coercion. Aside from the fact that appellant denied having made the statements—"that the victim tripped defendant and the latter went to his home, brought a revolver and shot him"— all the evidence reveals that Díaz Díaz had been advised by an attorney on his right not to testify and that the prosecuting attorney examined him for not more than 30 minutes asking him about the motive for the crime. Aware

of his right to remain silent and without any physical coercion whatsoever, he decided to make the statements attributed to him. *People* v. *Cruz*, 87 P.R.R. 124 (1963).

■ Error No. 10 refers to the actions of the court in permitting the prosecuting attorney to make leading questions. The best answer to this contention is made by appellant himself in his brief when he states "We do not believe that a judgment should be reversed just because mere leading questions are made." Most of the examples given did not deal with leading questions and in most instances they referred to unsubstantial details.

■ (c) Appellant argues that he was prejudiced by the judge's refusal to transmit to the jury some instructions requested on his "alcoholic condition" at the time of the occurrence. Although the evidence shows that Díaz Díaz had been drinking rum, there is nothing to show that he was in a state of intoxication which incapacitated him from forming or conceiving the purpose, intent or malice which are elements in the offense of murder. *People* v. *Febres*, 78 P.R.R. 850 (1956); *People* v. *Rivera*, 70 P.R.R. 541 (1949); *People* v. *Rosado*, 78 P.R.R. 416 (1955), is clearly distinguishable.

■ He also alleges that the instructions regarding the carrying of weapons are erroneous and that he failed to transmit them on the scope and extent of a license to have and possess a weapon and on the accidental carrying thereof. This assignment is partly based on the fact that appellant had a license issued to him by the Chief of Police in order to have as he argues, a weapon on his farm, and the occurrence took place in an establishment he owns located on the farm. The difficulty lies in that the business itself did not belong to defendant; it was leased to a third party. On the other hand, the evidence introduced by appellant himself did not justify that instructions on the incidental carrying of

weapons be transmitted to the jury, inasmuch as it establishes that he went there to wait for a certain person who was to give him some money, and that he entered the business *"just* to have a shot of rum." (Tr. Ev. 748.)

■ (d) The errors assigned to the effect that the verdicts are contrary to evidence and to law are clearly frivolous. Believed as it was, the evidence of the People fully justifies them. *People* v. *Barreto*, 85 P.R.R. 723 (1962).

The other incidental contentions do not require discussion. If anything, what may be asserted is that the jury was extremely generous with appellant in bringing a verdict of murder in the second degree.

The judgments rendered by the Superior Court, San Juan Part, on May 28, 1963 will be affirmed.